FILED
2/11/2021 10:28 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin

**2021CI02809**

W JD

Cause No. _____

| | | |
|---|---|---|
| JEFF STIEWIG and DENISE STIEWIG, <br> Plaintiffs | § <br> § <br> § <br> § <br> § <br> § | IN THE DISTRICT COURT OF <br><br> BEXAR COUNTY, TEXAS <br><br> 288th th JUDICIAL DISTRICT |
| v. | | |
| ALLSTATE VEHICLE AND PROPERTY <br> INSURANCE COMPANY, <br> Defendant | | |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Jeff Stiewig, and Denise Stiewig, (hereinafter "Plaintiffs" or the "Stiewigs") file this petition against Allstate Vehicle and Property Insurance Company, in which Plaintiff is seeking monetary relief in excess of $250,000.00. In support of this Petition, Plaintiffs will show this honorable court as follows:

### I. PARTIES, VENUE, AND DISCOVERY LEVEL

1. The Stiewigs are the insureds under the subject property insurance policy with Allstate Vehicle and Property Insurance Company. Defendant Allstate can be served through their registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

2. Defendant, Allstate Vehicle and Property Insurance Company (hereinafter "Defendant" or "Allstate"), is a property and casualty insurance company doing business in Texas.

3. The venue of this case is proper in Bexar County, Texas under Section 15.002 and 15.032 of the Texas Civil Practice and Remedies Code, and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereinafter "DTPA").

4. Plaintiff intends to conduct the discovery of this case under Level 2 pursuant to Rule 190.3.

5. The Court has jurisdiction over this case because the amount in controversy is within the jurisdictional limits of this Court.

## II. AGENCY AND RESPONDEAT SUPERIOR

6. Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such act or thing, such acts or things were done with the full authorization or ratification of Defendant, or done in the normal routine, course, and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## III. CONDITIONS PRECEDENT

7. All conditions precedent to recover have occurred or been performed.

## IV. FACTS OF THE CASE

8. The Stiewigs purchased a homeowners insurance policy from Allstate Vehicle and Property Insurance Company, having a policy number of 844115234, to cover property losses at 7418 Fieldgate Dr., San Antonio, TX 78227-1014 (hereinafter the "Property") for the policy period April 15, 2020 to April 15, 2021 (hereinafter the "Insurance Policy" or the "Policy").

9. On or about May 27th, 2020, during the subject policy period, a hailstorm caused extensive damage to the Stiewigs' home. The Stiewigs thereafter reported these losses to Allstate and its agents, who assigned this loss the claim number of 0597078021 (hereinafter the "Claim").

10. Allstate thereafter assigned desk adjuster Bryant Knepp to adjust the claim and estimate the amount of damage the hailstorm caused to the Stiewigs' home.

11. Plaintiffs are informed and believe, and thereon allege that Byrant Knepp, an employee of Allstate, deliberately prepared a results-oriented report with the express purpose of giving Allstate a false pretext to deny and/or undercompensate the Stiewigs for their loss. Bryant Knepp's report, dated on or about August 23, 2020 misrepresents the amount of covered damage to the Stiewigs home, and misrepresents the cost to repair such covered damage.

12. Allstate and Bryant Knepp's purposefulness is betrayed by their application of Allstate's notorious "Roof Surfaces Payment Schedule (RPS)" endorsement to the Stiewigs claim—an illegal coinsurance clause prohibited by Texas Insurance Code § 2002.005—when the RPS endorsement didn't even apply to the Stiewigs policy, since the Stiewigs had purchased the Roof Surfaces Extended Coverage Endorsement instead.

13. Using Bryant Knepp's false report as a pretext, Allstate purportedly offered the Stiewigs $3,702.70 to repair what, in truth, amounted to over $80,000 in damage. To-date, however, the Stiewigs have not received any payment whatsoever. Shortly thereafter the Stiewigs solicited a bid for repair from Safeguard Roofing, a roofing company. On or about September 4th, 2020, Safeguard sent Allstate its estimate to repair the hail damage to the roof, amounting to a sum well exceeding Allstate's estimate.

14. Undeterred by new evidence of the truth, Allstate continued its campaign of deception by hiring LadderNow, a forensic investigation firm to prepare a biased counter-estimate to the one provided by Safeguard. Plaintiffs are informed and believe and thereon allege that Allstate hires adjusters and consultants such as LadderNow because Allstate

knows that LadderNow will give Allstate favorable, results-oriented reports and estimates on which Allstate can deny or undercompensate an insured's claim.

15. The LadderNow report, prepared by Dakota Barber, contains:

   a. Photographs of the tarp-covered roof on the Stiewigs home,

   b. Photographs of Dakota Barber's handwritten contemporaneous notes of hail damage to nearly every slope of the roof of the Stiewigs home,

   c. Photograph's of Dakota Barber's handwritten note "metal portion of roof has <u>hail damage all over,</u>" amongst other handwritten observations showing extensive hail damage.

16. However elsewhere in the same report, Dakota Barber's after-the-fact type-written statements state there was "no hail or wind damage" to the Stiewig's home. Plaintiffs are informed and believe, and thereon allege that Allstate specifically instructed Dakota Barber to <u>alter</u> his findings from those shown by Barber's contemporaneously-made hand-written notes, and that Dakota Barber complied with Allstate's demand. Allstate explicitly adopted this deception in a letter dated October 28, 2020 from Allstate desk adjuster Lori Dunson.

17. As a result of Allstate's refusal to reasonably settle their claim, the Stiewigs retained Blackstone Claim Services, Inc., a licensed public insurance adjuster ("Blackstone") to assist with this claim on September 25th, 2020.

18. Blackstone's investigation report prepared on or about September 29th, 2020 revealed at least $79,206.66 in damage to the Stiewigs' home. After it was determined by Robert Searle, a licensed asbestos inspector, that the siding of the Stiewigs' home contained asbestos, it was determined that an additional $4,850.00 would be required to

abate the asbestos damage. The Blackstone report is supported by at least 160 photographs showing extensive hail damage to the Stiewigs home.

19. In short, Defendant Allstate failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recover upon the Policy had been carried out and accomplished by Plaintiffs. Allstate's conduct constitutes a breach of the insurance contract between Allstate and Plaintiffs.

20. Defendant Allstate further failed to make an attempt to settle Plaintiffs' claim in a prompt, fair, and equitable manner, although they were aware of their reasonably clear liability to Plaintiffs under the Policy. Defendant Allstate's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §§ 541.151 & 541.060(a)(2)(A).

21. Defendant Allstate failed to truthfully explain to Plaintiffs the reason for Allstate's offer of an inadequate settlement. Specifically, Defendant, with full knowledge of the extensive damage to Plaintiffs' Property, failed to offer any truthful explanation to Plaintiffs why full payment was not being made. Further, Defendant Allstate did not communicate that any future settlements of payments would be forthcoming to pay for the entire losses covered under the Policy, nor did Allstate provide any explanation for the failure to adequately settle Plaintiffs' claim. Allstate's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(3)

22. Defendant Allstate failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or

rejection, regarding the full and entire claim, in writing, from Allstate in violation of the Texas Insurance Code Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(4).

23. Defendant performed a pre-determined investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. Therefore, Allstate refused to fully compensate Plaintiffs under the terms of the Policy, and failed to conduct a reasonable investigation. Defendant Allstate's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(7).

24. Defendant Allstate failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Defendant Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.056.

25. Defendant Allstate failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, Allstate has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for their claims. Defendant Allstate's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.058.

26. After Plaintiffs' claim was presented to Allstate, the liability of Allstate to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Allstate has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Allstate's conduct constitutes a breach of the common law duty of good faith and fair dealing.

27. As a result of Defendant's unreasonable investigation, bad faith valuation, and unjustified delay, Plaintiffs were considerably underpaid on their claim and have suffered damages. The mishandling of Plaintiffs' claim has resulted in a significant delay in Plaintiffs' ability to repair their property, which has resulted in additional damages. To date, Allstate continues to delay the payment for damages to Plaintiffs' property. As a result, Plaintiff has not been paid in full for damages to their home.

28. Because of the acts of Allstate to deny and/or undercompensate Plaintiffs for the damage to their home, Plaintiffs remain fearful that they will discover water damage in the interior of their home due to openings created by the hailstorm which is the subject of this claim.

29. Plaintiffs have also experienced, and are likely to continue to suffer considerable stress, mental anguish, and detrimental health effects as a result of the fear of the deleterious effects of living in a home with damaged asbestos siding.

30. Defendant's conduct, by inducing Dakota Barber of LadderNow to falsify his report on the damage to the Stiewigs roof, constitutes actual fraud and Plaintiffs are entitled to exemplary damages. TEX. CIV. PRAC. & REM. CODE §41.003.

31. Defendant's conduct, by inducing Dakota Barber of LadderNow to falsify his report on the damage to the Stiewigs roof, displays actual malice on the part of Defendant, and Plaintiffs are entitled to exemplary damages. TEX. CIV. PRAC. & REM. CODE §41.003.

32. Defendant's conduct, by inducing Dakota Barber of LadderNow to falsify his report on the damage to the Stiewigs roof, constitutes gross negligence and Plaintiffs are entitled to exemplary damages. TEX. CIV. PRAC. & REM. CODE §41.003.

33. As a result of Defendant Allstate's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the undersigned attorney and law firm to represent them and prosecute these causes of action.

## V. CAUSES OF ACTION

34. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

35. Defendant Allstate is liable to Plaintiff for breach of contract, violations of the Texas Insurance Code, violations of the Deceptive Trade Practices Act-Consumer Protection Act ("DTPA"), and breach of the common law duty of good faith and fair dealing.

## FIRST CAUSE OF ACTION

### Breach of Contract

36. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

37. The Insurance Policy was a valid, binding contract between Plaintiffs and Defendant.

38. Defendant Allstate breached the terms of the contract.

39. Plaintiffs have fully performed, or are excused by Defendants express or implied waiver from fully performing, Plaintiffs obligations under the contract.

40. As a result of Defendants breach of the contract, Plaintiffs have suffered damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

### Violation of Texas Insurance Code – Unfair Settlement Practices

41. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

42. Defendant Allstate's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §§ 541.060(a) & 542.003. All violations under these articles are made actionable by TEX. INS. CODE §§ 541.151.

43. By misrepresenting the damage and cost to repair such damage to the Plaintiffs' home, Allstate violated TEX. INS. CODE § 542.003(b)(1), (4), (5), and (7).

44. By inducing its agent, Dakota Barber of LadderNow to deceptively alter his report on the damage to Plaintiffs' home, Allstate violated TEX. INS. CODE § 542.003(b)(1), (3), (4), (5), and (7).

45. By failing to conduct a reasonable investigation of the damage to Plaintiffs' Property, Allstate violated TEX. INS. CODE § 541.060(a)(1)-(3), (7), and § 542.003(b)(1)-(5), (7).

46. Each of these violations alone were sufficient to cause Plaintiffs to be deprived of the benefits of the Policy, to incur significant costs in hiring experts and other professionals to assist Plaintiffs in conducting the investigation and determination of damage that it was Allstate's duty to perform.

## THIRD CAUSE OF ACTION

### Violation of Texas Insurance Code – Prompt Payment of Claims

47. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

48. Defendant Allstate, by misrepresenting the cause and cost of repair of the damage to Plaintiffs' Property, by inducing its agent to create a false report to provide Defendant with a fraudulent pretext to deny Plaintiffs' claim, and by failing to conduct a reasonable investigation into Plaintiffs' claim, has failed to pay Plaintiffs' claim within the time prescribed by TEX. INS. CODE Chapter 542 Subchapter B, and is therefore liable to Plaintiffs for interest pursuant to TEX. INS. CODE § 542.060 accruing from the date of Plaintiffs' claim until the claim is fully paid, and liable to Plaintiffs for Plaintiffs attorneys fees incurred in enforcing Plaintiffs rights in this action.

## FOURTH CAUSE OF ACTION

**Violation of Texas Insurance Code – Unfair Insurance Practices**

49. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

50. By misrepresenting the damage and cost to repair such damage to the Plaintiffs' home, Allstate violated TEX. INS. CODE § 541.051(1)(A), and §541.061(1)-(5).

51. By inducing its agent, Dakota Barber of LadderNow to deceptively alter his report on the damage to Plaintiffs' home, Allstate violated TEX. INS. CODE §541.061(1)-(5).

52. Each of these violations alone were sufficient to cause Plaintiffs to be deprived of the benefits of the Policy, to incur significant costs in hiring experts and other professionals to assist Plaintiffs in conducting the investigation and determination of damage that it was Allstate's duty to perform.

## FIFTH CAUSE OF ACTION

### Violations of the Deceptive Trade Practices Act

53. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

54. Plaintiffs have met all conditions precedent to bringing this cause of action against Allstate. Specifically, Allstate's violations of the DTPA include, without limitation, the following matters:

   a. By its acts, omissions, failures, and conduct that are described in this petition, Allstate has violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Allstate's violations include, without limitation, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim, (2) failure to properly investigate Plaintiffs' claim, (3) Allstate's use of biased adjusters and consultants to obtain result-oriented estimates and reports to assist Allstate in denying and/or undercompensating Plaintiffs' insurance claim, and (4) Allstate's failure to pay for the proper care of Plaintiffs' Property on which Allstate's liability had become reasonably clear.

   b. As described in this petition, Allstate represented to Plaintiffs that the subject insurance policy and Allstate's adjusting and investigative services had characteristics or benefits that it did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

   c. As described in this petition, Allstate represented to Plaintiffs that the subject insurance policy and Allstate's adjusting and investigative services were of a

    particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA.

d. As described in this petition, Allstate represented to Plaintiffs that the subject insurance policy and Allstate's adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiffs the right to recover under Section 17.46(12) of the DTPA.

e. By representing that Allstate would pay to repair the damages caused by windstorm and/or hail and then not doing so, Allstate has violated Sections 17.46(b)(5), (7), and (12) of the DTPA.

f. Allstate has breached an express warranty that the damage caused by windstorm and/or hail would be covered under the subject insurance policy. This breach entitles Plaintiffs to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

g. Allstate's actions, as they are described in this petition, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Allstate's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA.

h. Allstate's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

55. Each and every one of the above-described violations are a producing cause of Plaintiffs' damages that are described in this petition.

## SEVENTH CAUSE OF ACTION

### Breach of Duty of Good Faith and Fair Dealing

56. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

57. By failing to conduct a reasonable investigation of the damage to Plaintiffs' Property, by misrepresenting the amount of damage and cost to repair such damage to Plaintiffs' Property caused by a loss covered by the subject insurance policy, and by inducing its agent, Dakota Barber of LadderNow to falsify his findings regarding the damage caused to Plaintiffs' property, Allstate has breached the common law duty of good faith and fair dealing.

58. Defendants' breach was a proximate cause of Plaintiffs' damages.

### 59.   APPRAISAL WAIVER

60. Defendant Allstate's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, and its decision to instead engage in intentionally deceptive conduct, routinely deny coverage on valid claims as stated herein, including but not limited to its bad faith conduct in inducing Dakota Barber of LadderNow to create a false report, constitute a waiver of the Policy's appraisal provision.

61. Defendant's acts were reasonably calculated to induce Plaintiffs to believe that compliance with the policy's terms is not desired or would be of no effect if performed. These acts amounted to a denial of liability, or a refusal to pay the loss.

62. Moreover, Plaintiffs were prejudiced by Defendant's actions because, among other harms, Plaintiffs were required to make repairs at their own expense, Plaintiffs have had to hire experts, contractors, and other persons at great cost to conduct the investigation of the

loss properly when it was Allstate's duty to do so. These harms have required Plaintiffs to incur substantial personal expenses to remedy and have caused delays that have exacerbated the damage to their property.

WHEREFORE, Plaintiff requests a trial by jury, and also requests that Defendant be cited to appear and answer, and on final hearing the court award Plaintiff a judgment against Defendant for the following:

1. Actual, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court,
2. Reasonable attorney's fees through trial and appeal,
3. Interest pursuant to Chapter 542 of the Texas Insurance Code on late and unpaid policy benefits,
4. Pre-judgment and post-judgment interest as provided by law,
5. Costs of court, and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

JOHN HILARY BARKLEY
State Bar No. 24117384
john@barkleylawgroup.com
336 North Main Street, Suite 206
Conroe, Texas 77301
619.888.3484
619.924.6886

**ATTORNEY FOR PLAINTIFFS**